UNION TRUST COMPANY, Executor, and MARY E. J. MERMOD v. RUDOLPH PAGENSTE-CHER, Collector, Appellant.

Division One, May 31, 1909.

1. **PUBLIC SEWER TAX: General Tax: Statute.** The tax contemplated by Sec. 5969, R. S. 1899, authorizing a city of the fourth class to "levy a tax on all property made taxable for State purposes over the whole city, to pay for the construction" of a public sewer, is a general tax, and not a special benefit assessment. Special assessments have for their basis special benefits, and can be levied on real property alone, and not on personal property. A tax "on all property made taxable for State purposes over the whole city" means a tax on both personalty and realty, and is, therefore, not a special tax. In addition to this, this section divides sewers into three classes, "public, district and private sewers," and provides for a tax for public sewers alone, and defines them to be such as "shall be established along the principal courses of drainage," showing that the purpose was to pay for, out of the city's public funds, only such sewers as are of utility to the municipality, and not for such as are of special utility to a particular portion thereof; whereas, the next two sections provide that district sewers are to be paid for by special assessments against the property within the district, and private sewers by individuals. So that it is apparent from the face of the three sections that the tax referred to in section 5969, though denominated therein as a "special public sewer tax," is a general municipal tax.

2. ———: ———: In Excess of Constitutional Limit: No Vote. The tax contemplated by Sec. 5969, R. S. 1899, for the construction of a public sewer, being a general municipal tax, no such tax in excess of fifty cents on the hundred dollars valuation

can be levied in a city having between one thousand and ten thousand inhabitants, unless such excess is authorized by a vote of the people; and while said statute says nothing about a vote of the people, the provision of the Constitution (Sec. 2, art. 10) requiring the approval of two-thirds of the qualified voters before a general tax in excess of fifty cents can be levied, must be read into said statute as a part thereof.

3. ———: ———: ———: **Annual Tax: And Tax Levied Only Once.** The restrictions of sections 11 and 12 of the Constitution apply to a tax that is to be levied but once as well as to those to be levied annually, and are not any the less applicable because the general municipal tax in excess of the maximum constitutional limit is to be levied only once and that for the construction of a public sewer. Said section 11 says that "said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness," etc.

4. ———: ———: ———: **Police Power.** It cannot be held that a general tax in excess of the maximum constitutional limit to be levied for the construction of a public sewer may be held to be within the terms of the Constitution on the ground that the construction of such a sewer is within the police powers of the State.

'Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge..

AFFIRMED.

*E. R. Chappell* and *Albert B. Chandler* for appellant.

(1) Appellant's demurrer to respondent's petition, based on the ground that the petition does not state facts sufficient to constitute a cause of action, should have been sustained. (2) The facts set out in the petition show that the board conformed to the statute under which it proceeded. Sec. 5969, R. S. 1899. (3) The petition does not state facts showing that the Legislature failed to conform to the Constitution in enacting the statute under which the board proceeded. Sec. 5969, R. S. 1899; Farrar v. City, 80 Mo. 379; Lamar v. City, 128 Mo. 188; K. C. v. Bacon,

147 Mo. 259; Adams v. Lindell, 72 Mo. 198. (4) The petition does not state facts sufficient to raise the question of the constitutionality of section 5969, supra.

*Tyrrell Williams* and *Paul V. Janis* for respondents.

(1) The re-levy of a tax in order to be valid must be at the same rate as the original levy. Sec. 5950, R. S. 1899; State ex rel. v. Ashbrook, 154 Mo. 375. (2) When an ordinance is unreasonable and oppressive it may be vacated on that ground alone. Corrigan v. Gage, 68 Mo. 541; Railroad v. Springfield, 85 Mo. 674; Hannibal v. Tel. Co., 31 Mo. App. 23; Willow Springs v. Withaupt, 61 Mo. App. 275. (3) 1. A tax by a city of the fourth class on all property generally, at the rate of $2.50 on the $100, and not authorized by a vote of the electors, is levied in violation of the constitutional limitation as to rate. Constitution, art. 10, sec. 11; Lamar Water Co. v. Lamar, 128 Mo. 188; State ex rel. v. Railroad, 169 Mo. 563; Brooks v. Schultz, 178 Mo. 222; Evans v. McFarland, 186 Mo. 703; State ex rel. v. Railroad, 123 Mo. 72. 2. The distinction between a property tax and a special assessment is a common law distinction upon which grave constitutional rights depend. There are at least four common law features of this distinction: (a) A special assessment can only be levied on land, never on personal property. 25 Am. and Eng. Ency. Law (2 Ed.), 1168; Newby v. Platte County, 25 Mo. 258; Spencer v. Merchant, 125 U. S. 345; Macon v. Patty, 57 Miss. 378. (b) A special assessment must be for a public improvement of a local nature; and local means local to a portion of the municipality as distinguished from the rest of the municipality, not local to the municipality as distinguished from the rest of the State. 25 Am. and Eng. Ency. Law (2 Ed.), 1176; Morgan Park v. Wiswall, 155 Ill. 262; Hale v. Keno-

sha, 29 Wis. 599; Adams v. Lindell, 5 Mo. App. 197, 72 Mo. 198. (c) A special assessment must always justify itself as a compensation for benefits conferred on the property. McCormack v. Patchin, 53 Mo. 33; Thornton v. Clinton, 148 Mo. 648; Levee Co. v. Hardin, 27 Mo. 495. (d) By common law there can be a personal judgment against a taxpayer on account of the property tax; with regard to a special assessment for local improvements, there can be no personal judgment against the property-owner, but merely a special judgment against the land to enforce the lien. Neenan v. Smith, 50 Mo. 525; St. Louis v. Allen, 53 Mo. 44; Creighton v. Manson, 27 Cal. 613. 3. The special tax authorized by Sec. 5969, R. S. 1899, like other special taxes authorized by statute, is a tax on all property generally but for a special purpose—in this case the special purpose of building sewers. Such a tax is subject to the restrictions imposed by article X of the Constitution. Sec. 5969, R. S. 1899; sec. 9274, R. S. 1899; State ex rel. v. Railroad, 169 Mo. 563; Brooks v. Schultz, 178 Mo. 222; Judson's Taxation in Missouri, 175; Cooley's Taxation (3 Ed.), p. 468. (4) Inasmuch as provisions of the general revenue law of the State made it impossible ever to collect this tax of $2.50 on the $100, from railroad, street railroad, telegraph and telephone companies owning property in Kirkwood, it follows that the tax was levied in violation of the constitutional requirements of uniformity. Constitution, art. 10, sec. 3; Sec. 9363 R. S. 1899; State ex rel. v. Railroad, 92 Mo. 137.

GRAVES, J.—Plaintiff Union Trust Company of St. Louis is the executor of the last will and testament of August S. Mermod, deceased, and plaintiff Mary E. J. Mermod is the widow of said deceased. As indicated, the defendant is the collector of the city of Kirkwood, Missouri, a city of the fourth class, with a population of more than one thousand and less than

ten thousand inhabitants.   By the petition is made to appear the respective interests of the parties plaintiff in and to a 26-acre tract of land within the corporate metes and bounds of the said city of Kirkwood, owned by the deceased in his lifetime and conveyed by his will.   This land is assessed at $19,600, or was so assessed for taxation purposes for the year 1905.

The said city of Kirkwood being desirous of building a system of public sewers, its board of aldermen on May 1, 1905, passed what is known as "Ordinance No. 318," levying a tax of $34,300 over the whole city of Kirkwood upon all property made taxable for State purposes, but said ordinance did not fix any rate, but section 2 thereof on that question provided:

"Section 2.   As soon as practicable after the passage of this ordinance, the city clerk shall extend the said taxation upon all property made taxable for State purposes over the whole city of Kirkwood, by making out appropriate and accurate tax books, in which he shall set out in suitable columns opposite the name of each person and the item of taxable property as returned by assessor and board of equalization, the amount of said taxes due thereon, apportioning the said sum of money hereinabove provided for and levied among the several owners of all the said property, according to the respective valuation thereon, as shown by the certified abstract returned to the mayor by the county assessor for the year 1905, as provided by law."

The total assessment of the property returned for State and county purposes at that time was $1,799,770, so that to raise the sum of $34,300, the rate would be a fraction less than $2 on the $100.

After the passage of this ordinance the plaintiffs instituted this suit, attacking the validity of the ordinance.   Pending the suit the city amended said ordinance, retaining section one thereof as to the raising of $34,300 for building the sewers, but striking out sec-

tions 2 to 6 inclusive, and enacting new sections in lieu thereof. The new section 2 thus reads:

"In order to carry into effect said levy of $34,300 and further to provide for the construction of said public sewers, it is hereby declared to be necessary to levy, and there is hereby levied, a special public sewer tax of $2.50 upon the $100 valuation upon all taxable property in the city of Kirkwood."

Upon the passage of this amended ordinance the city clerk prepared tax books extending said tax therein at the rate of $2.50 on the $100 valuation on the property within the corporate limits, including the twenty-six acres in which plaintiffs were interested. Tax bills were issued and delivered to the defendant as city collector, who was threatening to collect the same. Said ordinance was passed under the provisions of section 5969, Revised Statutes 1899, but the said proposition was never submitted to a vote of the qualified voters of the said city.

After the passage of the amended ordinance, and the making out of the taxbills and tax books under the provisions thereof, the plaintiff filed an amended or supplemental petition alleging all the facts and setting out said amended ordinance, alleging that said tax books and taxbills were invalid and constituted no valid lien. The petition also charges that the defendant was threatening suit upon said taxbills and that such purported levy, tax books and taxbills, although invalid and illegal, clouded and obscured plaintiffs' title, and by prayer asked for the cancellation of said taxbills issued against this property, as also the cancellation of the entry on the tax books of said tax against the land described, and that defendant be enjoined from further prosecuting or commencing a suit on said taxbill, and for all further relief.

After an unsuccessful motion to strike out the amended petition the defendant demurred thereto,

which being overruled, he refused to plead further, and judgment was entered granting to the plaintiffs the relief sought in their petition. From. this judgment the defendant has appealed to this court. By the petition it is charged that the ordinance, and inferentially the statute, is violative of certain constitutional provisions.

Points upon the demurrer as urged in the brief of appellant will be noticed as far as may. be necessary in the course of the opinion. For the present this sufficiently states the case.

I.   That the ordinance in question and the statute under which it was passed (Sec. 5969, R. S. 1899) make the tax in question a general tax as distinguished from a special assessment, to us appears quite clear. The statute reads:

"The board of aldermen shall have power to cause a general sewer system to be established, which shall be composed of three classes, to-wit: public, district and private sewers. Public sewers shall be established along the principal courses of drainage, at such points, to such extent, of such dimensions and under such regulations as may be provided by ordinance, and these may be extensions or branches of sewers already constructed, or entirely new throughout, as may be deemed expedient. The board of aldermen may levy a tax on all property made taxable for State purposes over the whole city, to pay for the constructing, reconstructing and repairing of such work, which tax shall be called 'special public sewer tax,' and shall be such amount as may be required for the sewer provided by ordinance to be built; and the fund arising from said tax shall be appropriated. solely to the constructing, reconstructing and repairing of said sewer."

It will be observed that the levy of this tax is to be upon all property taxable for State purposes.

Both real and personal property must be included. It is true that it is denominated "special public sewer tax," but it is nevertheless a general tax, because a burden upon all property in the municipality. It has none of the ear-marks of what we call special assessments. Special assessments have for their basis special benefits, and apply to real property alone, and not to personal property. In 25 Am. and Eng. Ency. Law (2 Ed.), 1168, such assessments are thus defined: "A special or local assessment is a burden imposed by law upon real property for a public improvement, the extent of the burden being determined by the special benefits which inure to the assessed property by reason of the improvement."

The statute under review divides sewers into three classes, i. e., "public, district and private sewers." The tax allowed is only for public sewers and these are by the act itself defined to be such as "shall be established along the principal courses of drainage," showing that the purpose was to pay out of public funds only for such sewers as were of utility to the municipality as a municipality, and not for such as were especially beneficial to a particular portion of the municipality. For other than public sewers, the succeeding sections provide the manner of payment. District sewers must be paid for by special assessments against the property within the district. [R. S. 1899, sec. 5970.] Private sewers must be paid for by the individual. [R. S. 1899, sec. 5971.]

So that when the three sections above mentioned, viz., sections 5969, 5970 and 5971, are read together, it is apparent that the "special public sewer tax" referred to in section 5969, is a general municipal tax, and in no sense a special assessment. We do not therefore have to depend upon other *indicia* of a general tax, but find evidence of the character of this tax in the face of the law itself. The ordinance we have before us conforms to the statute, and we hold that

it provides for a general municipal tax, although such tax is set apart for a special municipal purpose. This tax thus appears to be general in the sense of being levied upon all property alike within the domain of the taxing authority, but special in the sense only that it is levied for a special purpose or fund. Having fixed the character of the tax provided for by this ordinance we proceed another step and to the vital question in this case to which we devote the next paragraph of this opinion.

II. Plaintiffs contend that this levy of $2.50 on the $100 valuation is in violation of section 11 of article 10 of our State Constitution, and in this we think they are correct. This city has, under the pleadings, an admitted population of more than one thousand and less than ten thousand. By section 11 of article 10 of the Constitution the limit of taxes which may be levied and collected for any one year is fifty cents on the hundred dollars of valuation. The section, so far as applicable, reads: "in cities and towns having less than ten thousand and more than one thousand inhabitants, said rate shall not exceed fifty cents on the hundred dollars valuation; . . . provided, . . . for the purposes of erecting public buildings in . . . cities . . . the rates of taxes herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and two thirds of the qualified voters of such . . . city . . . voting at such election, shall vote therefor," and said section 11 concludes thus: "Said restrictions as to rates shall apply to taxes of *every kind and description, whether general or special,* except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness." Under the admissions in the pleadings, and we say

admissions because the demurrer admits the truth of the allegations in the petition, the question of this tax was never submitted to the qualified voters of the city of Kirkwood. It is urged for the defendant that the statute, section 5969, *supra,* does not require the question to be submitted to the voters, but into this statute must be read the constituional provision aforesaid (Evans v. McFarland, 186 Mo. l. c. 727); and before a legal tax in excess of fifty cents on the hundred dollars can be levied the question must receive the approval of two-thirds of the qualified voters, who vote at an election held for that purpose. That such is the view of this constitutional provision is abundantly shown by the cases. [Book v. Earl, 87 Mo. 246; Lamar Water Co. v. City of Lamar, 128 Mo. l. c. 221; State ex rel. v. Railroad, 169 Mo. 563; Aurora Water Co. v. City of Aurora, 129 Mo. 540; Brooks v. Schultz, 178 Mo. 222; Evans v. McFarland, 186 Mo. l. c. 726; City of Lexington ex rel. v. Lafayette Co. Bank, 165 Mo. l. c. 682; City of Stanberry v. Jordan, 145 Mo. 371.]

Several other cases might be cited, but it is so universally held that the constitutional limit of fifty cents cannot be exceeded without a vote upon the proposition, that further citation would be but to encumber this opinion.

Counsel for defendant urges that sections 11 and 12 of article 10 of our Constitution undertakes to deal with annual taxes solely, and therefore do not apply. In other words, the contention is that inasmuch as this tax is to be levied but once, and not annually, year after year, the constitutional restrictions have no force. The constitutional provision does not so read. It applies to all taxes, as will be seen by the reading of the concluding clause, *supra.*

It is next urged that the statute and the ordinance can be both held to be within the terms of the Constitution, because the construction of a public sewer

is within the police power of the State, and we are cited to the case of Morrison v. Morey, 146 Mo. 543, as lending color to this contention. That case had under consideration our law relative to levee districts and land assessments therein. The case has no application to the case at bar. It does discuss the police power of the State, but winds up with the proposition that the amounts to be collected were not a tax, but an assessment predicated on benefits to the land. Such is not the case at bar, for here we have a tax upon both personal and real property, and not an assessment against lands for benefits accruing thereto.

Other questions discussed in the briefs need not be discussed here, for counsel for defendant in his brief has well said: "The real and only point in the case is whether or not the tax levied by the city in excess of the fifty cents for the purpose of building public sewers was in violation of section 11, article 10, of the Constitution of Missouri."

From what has been said it follows that the trial court was right, and its judgment should be and is affirmed.

All concur.