## SCHAFF, Receiver, v. BORUM, County Treas.

No. 10128—Opinion Filed June 28, 1921.

Rehearing Denied July 26, 1921.

(Syllabus.)

1. Highways—Taxation—Constitutional and Statutory Limitations.

Under the provision of section 9, art. 10, of the Constitution, and section 2, art. 3, ch. 173, of the Session Laws of 1915, the county excise boards of the respective counties in the state of Oklahoma are authorized to make such levies as they deem proper for the improvement or construction and maintenance of state and county highways so long as such levies do not exceed the constitutional limitation of eight mills, as prescribed by the Constitution.

2. Same—County Limitation for Current Expenses.

In determining the total tax levy made for current expenses of a county a levy of two and one-half mills and one-fourth of one mill for the improvement of state and county highways and construction and maintenance of such highways, the same being authorized under section 2 of article 3, ch. 173, of the act of 1915, is properly excluded and is not controlled by the act of May 15, 1913, Session Laws 1913, page 435, limiting county levies for current expenses.

3. Same.

The act of March 15, 1915, chapter 173, Session Laws of 1915, creating a department of highways and relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are vested with authority to levy taxes for the purposes of carrying into effect the provisions of said act so long as such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of eight mills.

Error from District Court, Mayes County; Preston S. Davis, Judge.

Action by Charles E. Schaff, as receiver of the property of the Missouri, K. & T. Railway Company, against O. J. Borum, County Treasurer, to recover taxes alleged to have been illegally assessed against property of the plaintiff. Judgment for defendant, and plaintiff appeals. Affirmed.

Clifford L. Jackson, M. D. Green, and H. L. Smith, for plaintiff in error.

KENNAMER, J. This action was commenced by Charles E. Schaff, as receiver of the properties of the Missouri, Kansas &

Texas Railway Company, against O. J. Borum, as county treasurer of Mayes county, Oklahoma, to recover alleged illegal taxes assessed against the property of the plaintiff in Mayes county for the fiscal year beginning July 1, 1915, and ending June 30, 1916, which the plaintiff alleged were paid under protest by the plaintiff, as required by the statute. The cause was tried and submitted upon the following agreed statement of facts:

"It is hereby stipulated and agreed that all matters and things in controversy in the first count of plaintiff's petition in this suit, being all matters now involved in this suit, shall be submitted to the court, without a jury, jury being waived, for final hearing and determination, upon the following agreed statement of facts:

"That the total assessed valuation of all taxable property assessed in Mayes county, for the fiscal year beginning July 1, 1915, and ending June 30, 1916, was in excess of ten million ($10,000,000) dollars, and that the excise board of said Mayes county made levies for county purposes for said year as follows:

| Fund | Rate in Mills |
|---|---|
| Salary | .70 |
| Court | 1.20 |
| Road and bridge | 2.50 |
| Supply | .30 |
| Contingent | .40 |
| County road construction | .25 |
| Widows and orphans pension | .05 |
| Tick eradication | .40 |
| Separate school | .30 |
| | 6.10 |

—and that said levy had been extended against and charged upon all assessed taxable property in said county assessed for taxation for said fiscal year; that the total assessed valuation of plaintiff's property in said county for said fiscal year, was one million, six hundred thirty-one thousand, five hundred eight ($1,631,508.00) dollars.

"That on December 27, 1915, the plaintiff paid to the defendant, as such county treasurer, the first half of all taxes levied against the property of said Missouri, Kansas & Texas Railway Company, in said county, for said fiscal year, and that of the amount so paid the sum of one thousand, seven hundred thirteen and 08-100 ($1,713.08) dollars was paid under protest as alleged in plaintiff's petition as being in excess of the statutory limitations for county purposes for current expenses, said payment being made to prevent the immediate issuance of process and the immediate seizure and sale of said railway property for taxes, and that at the time of making such payment plaintiff gave notice to said defendant, showing the grounds of his complaint, and that suit would be brought against him for the recovery of said taxes so paid under protest."

The trial court rendered the following judgment in said cause, to wit:

"This cause came on regularly for trial on the 4th day of April, 1918, M. D. Green and Graves and Seaton appearing as counsel for the plaintiff, and W. E. Nicklin, for the defendant, whereupon a trial by a jury was expressly waived by the respective parties, and the cause submitted to the court upon a written agreed statement of facts. The court having read the agreed statement of facts, and having heard the argument of counsel, and being fully advised in the premises, finds all the facts in this action to be in accord with and as set forth in the agreed statement of facts.

"The court further finds that, under the provisions of the road and bridge laws of this state, there are only two systems governing the construction and maintenance of roads and bridges; one made applicable to state or county roads, to be constructed and maintained by the county alone, or by the state and county in the event the county shall levy as much as one-fourth of a mill for such road purposes; and all of such construction and maintenance to be under the supervision and control of the State Highway Commissioner; the other made applicable to township roads.

"The court further finds that under the provisions of section 6, article 2, of chapter 173, Session Laws 1915, all moneys received by the board of county commissioners for road and bridge purposes shall be paid out for the purchase of tools, machinery, and equipment, or for work done on the state road system, or for tile and tiling, or for bridges and culverts throughout the county, and that the moneys to be so received be covered into one fund or estimate to be known as the state highway construction fund or estimate.

"The court finds that the levies made by the excise board, as set out in the agreed statement of facts, to wit: 'For road and bridge, 2.50 mills' and 'For county road construction, .25 mills'—were made to raise and supply moneys for one and the same purpose or purposes, and the fact that the excise board did not consolidate these levies, or did not make same come under the name and title of state highway construction fund is a mere irregularity in nowise invalidating said levies, no injury having resulted therefrom. K., C. F. S. & G. R. Co. v. Scammon (Kan.) 25 Pac. 858; B. & M. R. Co. v. Board County Commissioners (Neb.) 11 N. W. 332; Wells Co. v. McHenry (N. D.) 74 N. W. Rep. 241.

"The court finds that under the provisions of section 2, article 3, chapter 173, Session Laws 1915, county excise boards

are authorized to levy any amount for state highway purposes that does not, when taken with levies for current expenses, exceed in the aggregate the constitutional and legislative limit of eight mills. Lusk et al. v. Starkey, 53 Okla. 794, 158 Pac. 918.

"The court finds that the Legislature of this state placed its interpretation upon said section 2, article 3, of chapter 173, Session Laws 1915, at its session in 1916 (see section 5, chapter 30, Session Laws 1916), and that said legislative interpretation was in full force and effect at the time of the filing of this action.

"It is therefore ordered, adjudged and decreed that the plaintiff take nothing by this action and that defendant have judgment for his costs expended herein, for all of which let execution issue."

Plaintiff filed motion for a new trial, which was overruled by the court, and the case is brought here for review by the plaintiff and the following specifications of error are assigned for the reversal of this cause:

(1) The trial court erred in its conclusions of law.

(2) The trial court erred in rendering judgment in favor of the defendant and against the plaintiff.

(3) The trial court erred in failing and refusing to render judgment in favor of plaintiff and against the defendant.

(4) The trial court erred in overruling plaintiff's motion for a new trial.

Counsel for the plaintiff in error contend that the statutory limitation upon county levies for current expenses is controlled by the act of May 15, 1913, found in the Session Laws of 1913, at page 435, amending section 7376 of the Revised Laws of 1910, which is as follows:

"* * * County levy not more than four mills, provided that any county may levy not exceeding one mill additional in aid of the common schools of the county; and provided that where the assessed valuation of any county is less than $4,000,000, the county levy shall not exceed six mills for current expenses, and one (1) mill in aid of the common schools of the county; and provided, further, that where the assessed valuation of any county is less than $10,000,000 and not less than $4,000,000, the county levy shall not exceed five mills for current expenses and one mill additional in aid of the common schools of the county. * * *"

Counsel for the plaintiff state that the difference between the 4 mills limitation, as fixed by this statute, supra, and the 6.1 mills levy made, as appears from the agreed statement of facts, is 2.1 mills, which on the valuation of the railroad company's property of $1,631,508 would be $3,426.16 and that one-half of this amount would be $1,713.08, for which this action is prosecuted, and that the plaintiff is entitled to recover this amount. Counsel for plaintiff concede that the levy of .25 mills for a county road construction fund was held not to be controlled by the statutory limitation in the case of Lusk et al. v. Starkey, 53 Okla. 794, 158 Pac. 918. But the counsel insist that in the Starkey case, supra, as shown by an examination of the dissenting opinion by Mr. Chief Justice Sharp, the separate school levy was involved and was held to be a current expense of the county controlled by the statutory limitation. However, it is admitted that in the case of Lusk et al. v. White, 58 Okla. 773, 173 Pac. 1128, this court held that the levy for separate school purposes was not a part of the current expense levy and, therefore, not controlled by the statutory limitation, and that the same rule was adhered to in the case of Chicago, R. I. & P. R. Co. v. Lane, 69 Oklahoma, 170 Pac. 502. We believe that the rule announced in the case of Lusk et al. v. White, and Chicago, R. I. & P. R. Co. v. Lane, supra, should be adhered to, and so far as the rule announced in the case of Lusk et al. v. Starkey, supra, conflicts, if there is any conflict with the rule in Lusk et al. v. White, and Chicago, R. I. & P. R. Co. v. Lane, the same is overruled.

In the case at bar the controlling law applicable to a proper decision of this cause will be found in article 10, sec. 9, of the Constitution, which reads as follows:

"Except as herein otherwise provided, the total taxes, on an ad valorem basis, for all purposes, state, county, township, city or town, and school district taxes, shall not exceed in any one year thirty-one and one-half mills on the dollar, to be divided as follows:

"State levy, not more than three and one-half mills; county levy, not more than eight mills: Provided, that any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools shall be apportioned as provided by law; township levy, not more than five mills; city or town levy, not more than ten mills; school district levy, not more than five mills on the dollar for school district purposes, for support of common school: Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

And that part of the act of May 15, 1913, Session Laws 1913, as herein quoted, supra, and the act of March 15, 1915, chapter 173, Session Laws 1915, creating a department of highways and relating to roads and highways. Section 1, art. 2, of said act in part provides:

"At the time of employing such engineer or as soon thereafter as practicable, the board of county commissioners shall designate and select for improvement as provided herein from the highways of the county not less than ten per cent. nor more than fifteen per cent., of the total mileage, same to be the main traveled roads of the county, and which must connect the principal market places of the county, as well as connect with the state roads in adjoining counties, such roads to be designated as state roads. The system of road construction herein provided for, shall apply only to highways outside of the limits of cities and towns, while the system of bridge and culvert work herein provided for shall apply to all highways throughout the county outside of the limits of cities of the first class. Such highways so designated for improvement under the supervision of the board of county commissioners shall hereinafter be known as the state road system."

Section 2 of article 3 of said act provides:

"The county excise board in each county in the state is hereby authorized, at the option of said board to make a levy of one-fourth of one mill upon all property in any said county subject to taxation upon an ad valorem basis; said levy when made and collected shall be covered into a county road construction fund, and shall be used for the construction and maintenance of county highways under the supervision of the board of county commissioners as provided in this act; provided, that in order to carry into effect the provisions of this act, the county excise board may levy for current expenses of said county not to exceed eight (8) mills."

It is apparent from reading that part of the act of 1915 found in article 2. section 1, supra, that it contemplates the permanent improvement of from ten to fifteen per cent. of the total mileage of county roads, which are to connect with the principal market places of the counties and connect with the state roads in adjoining counties, and so long as the levy made by the county for the purpose of improving such designated highways does not exceed the constitutional limitation of eight mills, the same is specifically authorized by the proviso found in section 2 of article 3 of said act.

Section 2 of article 3 also authorizes a levy of one-fourth of one mill for the construction and maintenance of such a highway where the same does not exist, and the levy made for the purpose of carrying into effect the provisions of said act, either to improve such designated highways or to construct and maintain such a highway so long as it does not when added to the levy for current expenses exceed the constitutional limitation of 8 mills, is authorized under the act. In this connection, however, it must be borne in mind that the county excise board, in making such levies as are to be expended under the provisions of this act, should specifically designate the purpose for which the levy is made, and the county commissioners cannot legally expend such funds levied for the purpose of improving such designated highways or constructing and maintaining the same for any other purpose, and an expenditure of such funds raised by such levies for any other purpose would be illegal, unauthorized, and subject officers permitting the same to the penalties of the law providing for such misconduct.

It is obvious upon a consideration of the 1915 act that it was the purpose and intent of the Legislature to vest the taxing powers of the respective counties with a wide discretion in making levies for the permanent improvement, construction, and maintenance of a system of state and county highways, and it is equally as apparent that it is the mandatory duty of the county commissioners to safeguard such funds, when provided for by such levies, and confine the expenditure to the purposes for which the same were levied.

Section 9 of article 10 of the Constitution, except the provisos regarding extra levies for schools, supra, is a limitation directed to the Legislature of the state, the power of taxation being an inherent power of the legislative branch of the government, and it is within the discretion of the Legislature to control and provide to what extent the municipal subdivision of the state may levy taxes, and the decision of the Legislature in this matter is conclusive upon the courts, and as long as the power granted to the various municipal subdivisions of the state is within the constitutional limitation, the courts have no authority to interfere with the authority granted. Gray's Limitations of Taxing Power and Public Indebtedness, secs. 2005, 2006; Beck, Tax Collector, v. Allen, 58 Miss. 143; Cooley's Third Edition on Taxation, pages 554, 555; 37 Cyc.

page 763; State v. Street et al., 117 Ala. 203; Thompson et al. v. Rearick, 33 Okla. 283, 124 Pac. 951.

In the case at bar the two and one-half mills levied as a road and bridge fund and the one-fourth of one mill levied for county road construction were found by the court to be for one and the same purpose; that is, to be expended for state highway purposes, and that said funds were intended for the improvement of designated highways or the construction or maintenance of state and county highways. This being true, the levies are authorized under the Constitution and the authority of the Legislature as provided in the act of 1915.

A system of state highways is indispensable to the peace, progress, and future development of a civilized people, and the wisdom of the Legislature in granting the various counties of this state a wide discretion in providing funds within the constitutional limitation for the improvement, building, and maintenance of a system of highways cannot be questioned, and the trial court having concluded that the two and one-half mills and the one-fourth of one mill in the case at bar were made for one and the same purpose, that is, the construction and maintenance of state and county highways, we conclude the levies are authorized under the provisions of the act of March 15, 1915, creating the department of state highways, and the Constitution.

The judgment is affirmed.

All the Justices concur